IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARTHA GARCIA,

        Plaintiff,

v.                                                  CV 19-0873 JHR

ANDREW SAUL,
Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This is an appeal of the Commissioner's Final Decision on Plaintiff Martha Garcia's applications for Social Security benefits. [Doc. 1]. The parties consented to the undersigned Magistrate Judge resolving their dispute and entering Final Judgment pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b). [Docs. 6, 15 & 16]. The matter is before the Court on Ms. Garcia's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum. [Docs. 17, 21, 22, 23]. Having reviewed the parties' briefing and the relevant portions of the Administrative Record ("*AR*"),[1] the Court **denies** Ms. Garcia's Motion and **affirms** the Final Decision of the Commissioner.

### I.     INTRODUCTION

Ms. Garcia seeks remand and a rehearing on her claims for Social Security benefits, arguing that she should have been found disabled by the administrative law judge ("ALJ") who issued the Final Decision in her case. Specifically, she argues that the ALJ erred as a matter of law and fact by ascribing only "limited weight" to her treating doctor's opinions, rendering his

---

[1] Documents 11 through 11-9 comprise the sealed Certified Transcript of the Administrative Record ("*AR*") for this appeal. The Court cites the Record's internal pagination, rather than the CM/ECF document and page numbers assigned when it was filed in this Court.

formulation of her residual functional capacity ("RFC") – on which the denial rests – unsupported by substantial evidence. [Doc. 17, pp. 12-17].  Alternatively, Ms. Garcia posits that the ALJ forgot to present her abilities in a formal "function-by-function" assessment, resulting in his failure to adequately consider her limited ability to handle and finger – which preclude work at all levels when combined with her other impairments. [Doc. 17, p. 19]. Ms. Garcia thus asks the Court to remand her claims to correct these errors through a rehearing.

Unfortunately for Ms. Garcia, this Court is precluded from second-guessing the Commissioner's reasoning where it is facially legal and supported by substantial evidence. The Court has carefully reviewed the ALJ's decision alongside the record and agrees that the ALJ could have been more precise when discounting treating Doctor Brent Van Andel's opinions. Still, where the ALJ's weight analysis applies the regulatory factors and is supported by substantial evidence – more than a scintilla but less than a preponderance – the Court must resist the temptation to reweigh the opinion and must instead defer to the Commissioner. This is especially true here by virtue of Ms. Garcia's failure to challenge the ALJ's overall assessment of her individual subjective symptomatic experience or his description of the bulk of the evidence – which the Court finds supportive of the ALJ's RFC determination. Likewise, Ms. Garcia has not convinced the Court that a formal function-by-function analysis was required here. Therefore, Ms. Garcia has failed to empower the Court to reverse the Commissioner's Final Decision, requiring affirmance.

## II.   <u>PROCEDURAL HISTORY</u>

Ms. Garcia applied for disability insurance benefits under Title II of the Social Security Act on June 9, 2015. *AR* at 260-261. She later applied for supplemental security income benefits under Title XVI of the Act on June 18, 2015. *AR* at 262-270. In both applications Ms. Garcia alleged a disability onset date of April 12, 2013, due to, as summarized by the Administration,

2

"Diabetes, High Blood Pressure, Liver Problems, Diffuse Innopathic Skeletal Hyperostosis, Adjustment Disorder with depression mood, Dyspepsia, Hypertension, Allergic Rhinitis [and] Sleep Disturbance." *See AR* at 120-121, 147. The Administration denied Ms. Garcia's applications at the initial and reconsideration stages of review, so she requested a de novo hearing before an administrative law judge ("ALJ"). *AR* at 118-206. ALJ Frederick E. Upshall, Jr., held a hearing on Ms. Garcia's applications on October 31, 2017, at which Ms. Garcia and Vocational Expert ("VE") Nicole King were questioned by the ALJ and Ms. Garcia's non-attorney accredited disability representative. *See AR* at 77-117.

At the hearing, Ms. Garcia amended her onset date to April 2, 2014, the date of her 50th birthday, and testified that she had not worked since then - last working as a nurse assistant in a retirement community. *AR* at 80-82. Ms. Garcia described her days as "miserable" and stated that residual pain from her carpal tunnel surgeries (in 2017) limited her ability to use both hands. *AR* at 84-100 (Ms. Garcia said she must take breaks to write and can no longer make tortillas or do other tasks without assistance.). When asked if the surgeries helped, she indicated that her right hand still bothered her "a lot" and her left was also currently bothering her because of the cold. *AR* at 99. She later testified that she cannot lift or carry any amount of weight due to pain in her hands and back. *AR* at 107-108.

The ALJ apparently was not convinced by Ms. Garcia's testimony, as the hypothetical individual he described to the VE later in the hearing retained the capacity to lift or carry up to 20 pounds occasionally and up to 10 pounds frequently with no further restrictions on her ability to push and pull, and the ability to frequently (as opposed to constantly or repetitively) handle and finger bilaterally. *AR* at 110-112. Such a person, according to the VE, could perform Ms. Garcia's past relevant work as a nurse assistant – a "housekeeper" under the Dictionary of Occupational

Titles ("DOT"). *AR* at 111-113. The VE further testified that such a person could work as a garment sorter and laundry sorter, but that all competitive employment would be precluded if such an individual was limited to occasional handling and fingering. *AR* at 112-113.

The ALJ issued an unfavorable decision on September 26, 2018, finding that Ms. Garcia retained the ability to work and denying benefits. *AR* at 39-68. Ms. Garcia submitted a Request for Review of Hearing Decision/Order to the Appeals Council on November 16, 2018. *AR* at 257-259. The Appeals Council denied Ms. Garcia's request for review on July 22, 2019, *AR* at 1-7, rendering the ALJ's decision the Final Decision of the Commissioner for the purposes of this appeal. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Ms. Garcia timely initiated this action on September 20, 2019, and, after an extension, briefing was completed on her motion to remand on May 15, 2020. [Docs. 1, 17, 21, 22, 23]. This Court has jurisdiction to review the Commissioner's Final Decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

### III.   THE COMMISSIONER'S FINAL DECISION

A claimant seeking social security benefits under the Act must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(l)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2]

---

[2] The Tenth Circuit summarized these steps in *Allman v. Colvin,* 813 F.3d 1326, 1333 n. 1 (10th Cir. 2016):

> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulations.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir.

4

At Step One of the sequential evaluation process, the ALJ found that Ms. Garcia has not engaged in substantial gainful activity since her amended alleged onset date. *AR* at 45. At Step Two, he determined that Ms. Garcia has the following severe impairments: "diabetes mellitus, degenerative disc disease; osteoarthritis; obesity; seronegative/inflammatory arthritis; anxiety; and depression[.]" *AR* at 45. At Step Three, the ALJ concluded that Ms. Garcia's combined impairments do not meet or medically equal the regulatory "listings" which presumptively establish disability. *AR* at 47-49. Ms. Garcia does not challenge the ALJ's findings at Steps One through Three in this appeal. [*See generally* Docs. 17, 22].

When a claimant does not meet a listed impairment at Step Three the ALJ must determine the extent to which she remains able to work (her RFC) before proceeding to identify past jobs she can still do at Step Four, or other jobs she can do despite her limitations at Step Five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). "RFC is not the least an individual can do despite his or her limitations or restrictions, but the most." SSR 96-8p, 1996 WL 374184, at *1.  In this case, the ALJ determined that Ms. Garcia retains the RFC to:

> lift up to 20 pounds occasionally, and that she can lift and/or carry up to 10 pounds frequently in light work as defined by the regulations. She can stand or walk for approximately 6 hours per 8-hour workday and sit for approximately 6 hours per 8-hour workday with normal breaks. Her ability to push and/or pull is limited by her ability to lift and/or carry. She can occasionally climb ramps and stairs, but she can never climb ladders, ropes or scaffolds. She can occasionally stoop, crouch, kneel and crawl. She can frequently bilaterally handle objects, which is defined as gross manipulation. She can frequently bilaterally finger items. She must avoid even moderate exposure to extreme cold and avoid concentrate exposure to environmental irritants, such as fumes, odors, dusts and gases. She must avoid all exposure to moving machinery and unprotected heights. She is limited to work involved only simple, routine and repetitive tasks in low stress jobs, defined as

---

2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

having only occasional simple decision making required and only occasional changes in the work setting with no production rate or pace work. She can have only occasional interaction with the public and with coworkers. She is limited to work that only requires occasional supervision. I find that this is a limited range of work contained in the light exertional level as defined by 20 CFR 404.1567, 20 CFR 416.967 and SSR 83-10.

*AR* at 49-58. The ALJ employed Ms. Garcia's RFC at Step Four, where he agreed with the VE's assessment that Ms. Garcia can still work as a housekeeper (as defined by the DOT). *AR* at 58. He further adopted her testimony at Step Five, finding that Ms. Garcia remains capable of working as a garment sorter or laundry sorter. *AR* at 59. As such, the ALJ determined that Ms. Garcia is not disabled as defined in the Social Security Act, and he denied benefits under Titles II and XVI. *AR* at 60.

Relevant to this appeal, when formulating Ms. Garcia's RFC the ALJ discussed her allegations, the function reports she and others submitted, the medical opinions in the file, and her medical records from April 2013 through the date of his decision. *AR* at 49-58. Based on this evidence, the ALJ concluded that Ms. Garcia's statements about the intensity, persistence and limiting effects of her symptoms were only partially supported by the objective evidence. *AR* at 51-57. For example, the ALJ noted bilateral minimal osteoarthritis in Ms. Garcia's thumb MCP and CMC joints in December 2015; reports of feeling "very comfortable" in her treatment notes as well as normal range of motion in May 2016; mild early osteoarthritis of the first CMC joints bilaterally on diagnostic imaging in August 2016; a March 2018 consultative physical examination by Raul Young-Rodriguez, M.D., opining that Ms. Garcia could lift and/or carry 21 to 50 pounds occasionally, 11 to 20 pounds frequently, and 10 pounds continuously, sit for eight hours and stand/walk for six hours out of an eight-hour workday, frequently reach overhead bilaterally, handle, finger, push and pull with her right hand, continuously reach in all directions with both hands, continuously handle finger, push and pull with her left hand, continuously operate foot

controls, and frequently balance, stoop, kneel, crouch, crawl and climb stairs, ramps, ladders and scaffolds; as well as unremarkable testing of Ms. Garcia's shoulders and hands in April 2018. *AR* at 52-55. The ALJ concluded that "[w]hile the evidence of record supports the conclusion that [Ms. Garcia] has several severe physical and mental impairments, it also indicates that her impairments improved or resolved with treatment, that her characterizations of pain are not consistent with treatment records and that her self-reported conditions were taken as true by providers." *AR* at 57. The ALJ further contrasted Ms. Garcia's allegations with her ability to drive a vehicle, interact with family and friends, walk for exercise, and assist in caring for her grandchildren. *AR* at 57. Ms. Garcia does not take issue with the ALJ's description of this evidence.

Furthermore, when determining that Ms. Garcia's statements were inconsistent with objective evidence the ALJ gave "limited weight" to the two opinions offered by Dr. Van Andel, Ms. Garcia's treating physician. *AR* at 57. [3] The ALJ reasoned that

> despite being an acceptable medical source under the regulations who had a treating relationship with the claimant [Dr. Van Andel's] opinions are not consistent with his objective treatment records or his own objective clinical and laboratory findings, while his opinion is contradicted by the opinion of State agency consultative examiner Dr. Young-Rodriguez, who examined the claimant…. I further note that several of the conditions that he opined caused the claimant limitations are not severe impairments, based in large part on Dr. Van Andel's own treatment notes in which he opined that several of the conditions were controlled. I note specifically that his opinion that the claimant had 10/10 pain in all joints is inconsistent with his own treatment records, which indicate that the claimant repeatedly appeared in no acute distress and that she reported pain of 2-5/10. Finally, I note that his conclusion that the claimant "can not [(sic)] work" is a finding reserved to the Commissioner.

---

[3] Dr. Van Andel technically offered a third opinion on October 15, 2015, in a letter written on Ms. Garcia's behalf stating that she cannot sit or stand for long periods of time and therefore would have difficulty serving on a jury. *See AR* at 778.The ALJ gave this opinion "moderate weight" because of Dr. Van Andel's treatment relationship with Ms. Garcia, declining to give it more weight because Dr. Van Andel did not quantify the length of time Ms. Garcia could reasonably be expected to stand or sit, "making his statement of limited use to [the ALJ] in determining [her] residual functional capacity." *AR* at 52. Ms. Garcia does not challenge the weight assigned to this opinion. [*See* Docs. 17, 22].

*AR* at 57-58. As such, the ALJ only adopted Dr. Van Andel's opinions to the extent that they were consistent with his formulation of Ms. Garcia's RFC. As noted, Ms. Garcia contends that the ALJ committed reversible error in doing so.

## IV.   LEGAL STANDARDS

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). The Court must "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted). The Court reviews only the sufficiency of the evidence, not its weight. *Oldham v. Astrue*. 509 F.3d 1254, 1257 (10th Cir. 2007). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[,] [and] requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (quotation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record[.]" *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

## V.   ANALYSIS

As explained above, Ms. Garcia argues that the ALJ failed to properly weigh treating Dr. Van Andel's opinions. She further argues that the ALJ erred by failing to conduct a function-by-function assessment of her work-related abilities as required by SSR 96-8p. The Court finds neither argument persuasive, for the following reasons.

A)  **The ALJ applied the regulatory factors when ascribing "limited weight" to treating physician Dr. Van Andel's opinions and his reasons, while not completely accurate as written, are supported by substantial evidence - precluding remand.**

Dr. Van Andel filled out Medical Source Statement Questionnaires for Ms. Garcia on December 12, 2016 and October 12, 2017. *AR* at 997-1000, 1210-1213. These Questionnaires are the medical opinions Ms. Garcia claims the ALJ improperly weighed. [*See* Doc. 17, pp. 10-12]. As described below, both opinions would preclude Ms. Garcia from competitive employment if adopted by the ALJ. *See AR* at 997-1000, 1210-1213. The restrictions they impose, and the ALJ's reasons for rejecting those restrictions, determine whether Ms. Garcia has demonstrated reversible error.

In his October 2015 statement Dr. Van Andel stated that he had seen Ms. Garcia monthly for roughly five years. *AR* at 997. He noted her impairments as inflammatory arthropathy, dish syndrome, plantar fasciitis, carpal tunnel, diabetes, high blood pressure and sleep apnea and stated that her related symptoms included 10/10 pain in her hands, feet, low back and shoulders. *AR* at 997. Under "clinical findings and objective signs" he wrote "elevated ESR, X-rays show arthritis[,] rheumatology consult." *AR* at 997. Dr. Van Andel noted that Ms. Garcia can walk only one city block without rest or severe pain, can only sit about two hours out of eight and cannot stand/walk for that amount of time. *AR* at 998. He stated that she could rarely lift and carry at most 10 pounds rarely (never carrying more weight), can only rarely move her neck in any direction and twist or stoop and never crouch/squat, climb ladders or stairs, and has significant limitations in her ability to reach, handle and finger – to the point that she is precluded from bilateral use of her hands, fingers and arms for any more than 10% of an eight hour workday. *AR* at 999-1000.

Dr. Van Andel's second statement echoed the diagnoses and impairments listed in his first, adding fibromyalgia and osteoarthritis. *See AR* at 1210. He stated that Ms. Garcia suffered 9/10

9

pain in her back, head, hands and wrists (from carpal tunnel), and stomach. *AR* at 1210. She could now no longer walk a city block without rest or severe pain and could still only sit for about two hours (less for standing and walking – for which she now required an assistive device) total out of an eight-hour day. *AR* at 1211-1212. Her lifting and carrying ability decreased to less than 10 pounds rarely and never more, with only rare twisting and no stooping, crouching, or climbing stairs or ladders. *AR* at 1212. And, Dr. Van Andel again opined that Ms. Garcia suffers from significant limitations in reaching, handing and fingering – to the extent that her use of her arms and hands should be limited to no more than 10% of an eight-hour workday. *AR* at 1213.

Ms. Garcia argues that the ALJ erred when he gave "limited weight" to these statements. Having reviewed the record and the ALJ's weight analysis, the Court is not persuaded.

Under law, "[i]t is the ALJ's duty to give consideration to all the medical opinions in the record…. He must also discuss the weight he assigns to such opinions." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citations omitted). This is especially true of opinions offered by physicians who treat a claimant. "[C]ase law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

First, the ALJ should determine whether the opinion is entitled to "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." *Id.* (quotation omitted). "[I]f the opinion is deficient in either of these respects, then

it is not entitled to controlling weight." *Id.* "An ALJ should keep in mind that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Id.* (quoting SSR 96–2p, 1996 WL 374188, at *2).

If a treating physician's opinion is not entitled to controlling weight the ALJ proceeds to weigh it alongside the other medical evidence in accordance with regulatory factors at the second step of the analysis. *Watkins*, 350 F.3d at 1300 (quoting SSR 96–2p, 1996 WL 374188, at *4). The relevant factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Krauser*, 638 F.3d at 1331 (quoted authority omitted); *see* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). An ALJ is "not required 'to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion.'" *Razo v. Colvin*, 663 F. App'x 710, 715 (10th Cir. 2016) (unpublished) (quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)). Rather, the ALJ must only provide "good reasons," supported by substantial evidence, for the weight assigned to the treating physician's opinion. *Id.* Only if the ALJ rejects the opinion completely, must he then give "specific" and "legitimate" reasons for doing so. *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004).

Ms. Garcia argues that the ALJ omitted the first step of the treating physician analysis and cites one of this Court's prior opinions for the proposition that "[i]n the past, this Court has held

11

that skipping the first step in the analysis constitutes reversible error." [Doc. 17, p. 13 (citing *Herrera ex rel. Herrera v. Berryhill*, CV 17-1125 JHR (D.N.M. Mar. 4, 2019)]. However, as this Court recognized in *Herrera*, the Tenth Circuit has indicated that "where a reviewing court can determine that an ALJ 'implicitly declined to give the opinion controlling weight' there is no ground for remand." 2019 WL 1014797, at *4 (quoting *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014)). This reasoning is applicable here.

Here, the ALJ's decision to ascribe Dr. Van Andel's opinion "limited weight" shows that he implicitly declined to give it controlling weight. Moreover, while the ALJ may not have use the words "controlling weight," his analysis encompassed the relevant factors, as the ALJ specifically found Dr. Van Andel's opinions to be inconsistent with his own treatment records and objective clinical and laboratory findings as well as the opinion of consultative examiner Dr. Young-Rodriguez. *Id.* at 57. More importantly, the ALJ continued with the required regulatory analysis and his findings are supported by substantial evidence, precluding remand.

As set forth above, the ALJ decided to only give limited weight to Dr. Van Andel's opinions because – despite being an acceptable medical source who had a treating relationship with Ms. Garcia – his opinions were inconsistent with his objective treatment records and clinical and laboratory findings, as well as the opinion of State agency consultative examiner Dr. Young Rodriguez "who examined the claimant." *AR* at 57-58. The ALJ also noted that several of the conditions Dr. Van Andel opined caused limitations were not ultimately found to be severe impairments, "based in large part on Dr. Van Andel's own treatment notes[.]" *AR* at 58. He also found inconsistent Dr. Van Andel's notations that Ms. Garcia "repeatedly appeared in no acute distress" with his suggestion that her pain was a 10/10 and noted that his conclusion that Ms. Garcia "cannot work" is a finding reserved to the Commissioner. *AR* at 58.

In other words, the ALJ expressly considered: (1) the nature and extend of Dr. Van Andel's treatment of Ms. Garcia, *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); (2) the degree to which Dr. Van Andel's clinical and laboratory findings supported his opinion, *see* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3); (3) the consistency of Dr. Van Andel's opinion with other evidence, *see* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); and, (4) the Administration's general prerogative to determine disability under the Social Security Act. *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). Thus, the ALJ's analysis addressed four of the six regulatory factors; nothing further was required if his reasons were supported by substantial evidence.

The Court finds that Ms. Garcia's objections to the ALJ's analysis do not outweigh the evidence supporting his conclusion that Dr. Van Andel's opinions should be given "limited weight." Admitting that his statement that she cannot work infringes on the Commissioner's prerogative, Ms. Garcia nonetheless argues that the ALJ was required to recontact Dr. Van Andel before rejecting his opinion that she was disabled. [Doc. 17, p. 14]. The Court disagrees for two reasons. First, the ALJ did not *reject* Dr. Van Andel's opinions entirely – he just found that they were *outweighed* by other evidence, including Dr. Van Andel's own clinical findings. Second, and more importantly, the pertinent regulation does not require the Administration to recontact a medical source where, as here, the remaining evidence permits a determination of disability. *See* 20 C.F.R. §§ 404.1520b(b), 416.920b(b). The ALJ apparently believe that he had sufficient information to decide this case, and Ms. Garcia points to nothing suggesting that further development of the record would have changed the result where the remainder of Dr. Van Andel's statements clearly preclude competitive employment.

Next, Ms. Garcia argues that the ALJ's statement that she "repeatedly appeared in no acute distress and that she reported pain of 2-5/10" is not supported by substantial evidence. [Doc. 17,

p. 15]. Ms. Garcia admits that half of this statement is true – "it is not disputed that Ms. Garcia was 'repeatedly' noted as appearing in no acute distress," [*id.*], but she argues that the ALJ's phrasing implied that she consistently reported a low pain level, which is "not accurate." [*Id.*]. The Court agrees both that the ALJ should have been more careful with his language and that there is little support for the 2-5/10 reporting referenced by the ALJ in Dr. Van Andel's records. *See, e.g.*, *AR* at 517, 532, 545, 624, 650, 665, 678, 869, 875, 884, 969, 1048, 1273, 1286, 1290, 1295, 1300, 1312, 1319, 1335. Nonetheless, even if this reason is discarded, the objective component of the ALJ's reason – how Ms. Garcia *appeared* to Dr. Van Andel (in no acute distress) – is inconsistent with his statement, likely based on Ms. Garcia's own reporting, that she had 9-10/10 pain in all joints.

Additionally, this Court may permissibly ignore an ALJ's faulty reasoning when conducting its review if the Commissioner's analysis is otherwise supported in its totality. *See, e.g., Lax*, 489 F.3d at 1088; *Bainbridge v. Colvin*, 618 F. App'x 384, 390 (10th Cir. 2015) (unpublished) ("[E]ven if this reason was improper, the other reasons the ALJ gave were more than sufficient for rejecting Dr. Bates's opinion."); *Bills v. Comm'r, SSA*, 748 F. App'x 835, 840 (10th Cir. 2018) (unpublished) ("We agree that this was not a good reason for discounting Dr. Mitchell's opinion regarding Ms. Bills's ability to stand and walk. This misstep, however, is not dispositive because substantial evidence still supports the ALJ's rejection of Dr. Mitchell's opinion of Ms. Bills's standing and walking abilities."). The Court exercises this discretion here to ignore the ALJ's misstep in contrasting Ms. Garcia's reported pain level with Dr. Van Andel's notations that she was in no acute distress.

Third, Ms. Garcia argues that the ALJ's statement about which impairments Dr. Van Andel found to cause limitations as compared to those the ALJ determined to be severe under the

regulations to be unsupported. [Doc. 17, p. 16]. Even accepting Ms. Garcia's arguments, the Court is not convinced she has shown reversible error. Ultimately, the Commissioner, as opposed to a doctor, is responsible for determining whether a claimant has a severe impairment, *see* 20 C.F.R. §§ 404.1520b(c)(3)(ii), 416.920b(c)(3)(ii), and it goes without saying that the ALJ is tasked with resolving evidentiary conflicts. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016). Moreover, as with the ALJ's description of Ms. Garcia's reported pain level, the Court finds his weight analysis sufficient even discarding this reason *arguendo*. *See Lax*, 489 F.3d at 1088.

Finally, Ms. Garcia takes issue with the ALJ's comparison of treating Dr. Van Andel's opinion with consultative examiner Dr. Young-Rodriguez.' [Doc. 17, pp. 17-18]. However, she fails to demonstrate how or why the ALJ erred in relying on Dr. Young-Rodriguez' opinion or that he weighed it inappropriately. *See, e.g.*, *Scott v. Berryhill*, 695 F. App'x 399, 404 (10th Cir. 2017) (unpublished). In such cases, "[a]n ALJ may discount a treating physician's opinion because it is inconsistent with the weight of the evidence[.]" *Webb v. Commissioner, Social Security Administration*, 750 F. App'x 718, 721 (10th Cir. 2018) (unpublished) (citations omitted). The Court finds this principle applicable here, as Ms. Garcia has presented no reason to doubt the sincerity of Dr. Young-Rodriguez' findings whereas the ALJ provided supported reasoning for ascribing less weight to Dr. Van Andel's.

Thus, having considered the ALJ's reasoning against the record as a whole, the Court is unconvinced that the ALJ erred by assigning "limited weight" to Dr. Van Andel's rather restrictive assessment of Ms. Garcia's abilities.

**B) Any structural error in the ALJ's discussion of Ms. Garcia's RFC is excusable under binding law because the ALJ considered Ms. Garcia's limitations and functional capabilities through a narrative discussion of the relevant evidence.**

Ms. Garcia's second argument for reversal is purely legal. She posits that the ALJ failed to conduct a function-by-function assessment as required by SSR 96-8p. [Doc. 17, pp. 18-19]; *see* SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). The Commissioner counters that the ALJ adequately articulated Ms. Garcia's RFC and did not overlook any limitations Ms. Garcia now complains should have been considered. [Doc. 21, pp. 9-11 (citing *Hendron v. Collvin*, 767 F.3d 951, 954-7 (10th Cir. 2014))]. Rather than addressing *Hendron*, Ms. Garcia argues in reply that, because record evidence conflicts with the ALJ's determination, he was required to conduct the function-by-function assessment to ensure proper articulation of her RFC. [Doc. 22, pp. 7-8]. The Court is not convinced.

In the past, this Court and others required strict adherence to SSR 96-8p's requirement of a function-by-function assessment when determining RFC. "The concern [was] that, without a function-by-function analysis, an ALJ 'may . . . overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" SSR 96-8p, 1996 WL 374184, at *4. Thus, in the absence of a mandatory and proper function-by-function analysis, the case was automatically remanded for the ALJ to perform that necessary assessment. *See, e.g.*, *Southard v. Barnhart*, 72 F. App'x 781, 784 (10th Cir. 2003) (unpublished).

However, in 2014 the Tenth Circuit held in a published decision that the omission of the formulaic function-by-function analysis set forth in SSR 96-8p is harmless so long as the ALJ's decision discusses and addresses any pertinent limitations and is otherwise supported by substantial evidence. *See Hendron*, 767 F.3d at 954-7 ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards

16

have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal."). As noted by the court, SSR 96-8p's primary concern is ensuring that the RFC assessment includes "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at 954 (quoting 1996 WL 374184, at *7). The court found this standard was met in *Hendron* because the ALJ "thoroughly reviewed the medical evidence" and "specifically noted where the evidence was inconsistent with Ms. Hendron's claims of extreme limitations[.]" *Id.* The court agreed that omission of a formal function-by-function assessment could be "critical" in some cases, but determined that, there, the ALJ did not overlook the claimed problem – an inability to sit long enough to perform sedentary work – despite the alleged structural error. *Id.* at 956-957 ("In this case, the ALJ's failure to find explicitly that Ms. Hendron was capable of sitting for six hours during a regular eight-hour work day was not critical to the outcome[.]").

The facts of this case demand a similar result. The ALJ's formulation of Ms. Garcia's RFC in this case referenced all pertinent strength demands as well as the fingering and handling limitations she claims were overlooked. *AR* at 49. Accordingly, the Court finds that any structural error in the ALJ's RFC analysis is harmless.

"RFC determines a work capability that is exertionally sufficient to allow performance of at least substantially all of the activities of work at a particular level." SSR 83-10, 1983 WL 31251 at *2. It is a reflection of "the maximum amount of each work-related activity the individual can perform," and, in reaching it, an ALJ must describe the "individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, *7. Ordinarily, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function

basis," including the "seven strength demands" of sitting, standing, walking, lifting, carrying, pushing and pulling. *Id*. at \*1, 5; (citing 20 C.F.R. §§ 404.1545, 416.945).

As noted, the ALJ's RFC explicitly found Ms. Garcia capable of sitting, standing and walking for six hours in an eight hour workday and that she can lift up to 20 pounds occasionally and lift and/or carry up to 10 pounds frequently with similar restrictions on her abilities to push and pull. *AR* at 49. As such, the Court is not convinced that the ALJ erred at all.

However, assuming he did, *Hendron* made clear that an ALJ's omission of this formulaic analysis is harmless so long as it is apparent that the ALJ considered the applicable strength demands. *See Hendron* 767 F.3d at 957. The Court has little concern that the ALJ met this standard given the depth of his discussion of Ms. Garcia's ability to lift, carry, handle and finger. *See, e.g.*, *Patterson v. Colvin*, 662 F. App'x 634, 639 (10th Cir. 2016) (unpublished) (citing *Hendron*, 767 F.3d at 956–57). Here, the ALJ had evidence from several acceptable medical sources concerning the seven applicable strength demands, including Drs. Van Andel and Young-Rodriguez' conflicting reports – which the ALJ duly weighed. *AR* at 52-54. As such, the Court finds *Hendron* applicable and holds that, even if the ALJ somehow omitted the required assessment, he did not omit a pertinent limitation when discussing Ms. Garcia's RFC. Ms. Garcia's refusal to address *Hendron* in her Reply, much less argue why it's binding holding is distinguishable from these facts, precludes a finding in her favor, [*see generally* Doc. 22]; and, the Court agrees with the Commissioner that Ms. Garcia is really asking the Court to find that the ALJ should have restricted her RFC to a greater degree based on Dr. Van Andel's opinions, [*see* Doc. 21, p. 10], which is not a proper basis for remand where the ALJ's RFC analysis is otherwise supported by substantial evidence.

## VI.  CONCLUSION AND ORDER

The Court is precluded from reweighing Dr. Van Andel's opinions or substituting its judgment for the Commissioner's where, as here, the assigned ALJ adequately addressed the regulatory factors and ascribed the opinions "limited weight" by reference to substantial record evidence. Likewise, Ms. Garcia has failed to convince this Court that the ALJ's formulation of her RFC omitted a supported limitation in her ability to lift, carry, handle or finger. Thus, Ms. Garcia has failed to demonstrate that the Commissioner's decision to deny benefits was tainted by harmful legal error.

Wherefore, **IT IS THEREFORE ORDERED** that Ms. Garcia's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 17], is **DENIED** and the decision of the Commissioner of Social Security is **AFFIRMED**.

_____
JERRY H. RITTER
U.S. MAGISTRATE JUDGE
Presiding by Consent